IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| CAMARIE MANGUM, | ) | |
| | ) | Case No. CV-05-507-E-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **DECISION AND ORDER** |
| | ) | |
| ACTION COLLECTION SERVICE, INC., | ) | |
| d/b/a ACTION COLLECTION, an Idaho | ) | |
| Corporation, BONNEVILLE BILLING & | ) | |
| COLLECTIONS, INC., an Idaho | ) | |
| Corporation, BANNOCK COLLECTIONS, | ) | |
| INC., an Idaho Corporation; and CITY OF | ) | |
| POCATELLO, a Political Subdivision of | ) | |
| the State of Idaho, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it Defendant Bannock Collections' Motion for

Summary Judgment (Docket No. 46), Defendant City of Pocatello and Don Furu's

Motion for Summary Judgment (Docket No. 54), Defendant Bonneville Billing &

Collections, Inc.'s Motion for Summary Judgment (Docket No. 58), and Plaintiff's

Motion for Summary Judgment (Docket No. 60). The Court heard oral argument

on the motions on May 7, 2007, and now issues the following decision.

**Memorandum Decision and Order - Page 1**

## ANALYSIS

### I.     Summary Judgment Standard of Review

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id.* at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings.  *Id.*  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a

**Memorandum Decision and Order - Page 2**

genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex, 477 U.S. at 324*.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## II.   FDCPA Claims

Bannock Collections, Inc. ("Bannock") and Bonneville Billing &

**Memorandum Decision and Order - Page 3**

Collections, Inc. ("Bonneville") contend that Mangum's FDCPA claims are barred by the FDCPA's one-year statute of limitations.  As Mangum points out in her brief, her FDCPA claims are brought pursuant to 15 U.S.C. § 1692c and d for alleged unlawful communications with her employer and a retail store.  It is undisputed that those communications occurred on December 6 and 7, 2004. (Newbry Decl. at ¶ 3; Bodily Decl. at ¶ 5).  Mangum filed her lawsuit over a year later on December 14, 2005.

The FDCPA states that "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  Mangum contends, however, that the Court should apply the general discovery rule, which states that a federal statute of limitations begins to run when a party knows or has reason to know that she was injured.  Applying that rule, Mangum argues that her claims are not precluded by the statute of limitations because she did not learn about the alleged violations of the FDCPA until December 15, 2004.

Neither the parties nor the Court was able to locate a case addressing the specific question of whether the general discovery rule applies to the FDCPA

**Memorandum Decision and Order - Page 4**

statute of limitations.[1]  However, in *TRW Inc. v. Andrews*, 534 U.S. 19 (2001), the United States Supreme Court addressed whether the general discovery rule applies to the Fair Credit Reporting Act ("FCRA").  In *Andrews*, the Supreme Court recognized that equity tolls the statute of limitations in cases of fraud or concealment.  *Andrews*, 534 at 27.  The court specifically stated, however, that there is no general presumption applicable across all contexts, and the only other cases in which the Supreme Court had recognized a prevailing discovery rule were cases decided in the context of latent disease or medical malpractice – cases which cry out for such a rule.  *Id.*

Moreover, although the Supreme Court recognized that lower federal courts generally apply a discovery accrual rule when a statute is silent on the issue, the Court noted that it has not adopted that position, and has never endorsed the view that Congress can convey its refusal to adopt a discovery rule only by explicit command, rather than by implication from the structure or text of the particular

---

[1] The Ninth Circuit has addressed the limited question regarding at what point the statute of limitations begins to run when the alleged violation of the FDCPA is the filing of a lawsuit.  *See Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997).  In that case, the Ninth Circuit determined that the filing date is the debt collector's last opportunity to comply with the Act, is easily ascertainable, and is the date which triggers the statute of limitations.  *Id*.  However, the Court did not address whether or not to apply the general federal discovery rule to the FDCPA statute of limitations.

**Memorandum Decision and Order - Page 5**

statute.  *Andrews*, 534 at 27-28.  The Supreme Court went on to state that the

"FCRA does not govern an area of the law that cries out for application of a

discovery rule, nor is the statute 'silent on the issue' of when the statute of

limitations begins to run."  *Id.* at 28.  Section 1681p of the FCRA addresses that

precise question by stating that an action to enforce any liability created under the

Act may be brought within two years from the date on which the liability arises.

*Id.* (citing 15 U.S.C. § 1681p).  The Supreme Court concluded that the text and

structure of § 1681p was evidence of Congress' intent to preclude judicial

implication of a discovery rule.  *Id.*

The FDCPA governs the same area of law governed by the FCRA, and

therefore likewise does not govern an area of the law that cries out for application

of a discovery rule.  Moreover, the FDCPA, which states that an action to enforce

any liability created by the FDCPA may be brought within one year from the date

on which the violation occurs, also addresses the precise question of when the

statute of limitations begins to run.  Thus, the text and structure of § 1692k, like

that of § 1681p of the FCRA, is evidence of Congress' intent to preclude a judicial

implication of a discovery rule.

In *Andrews*, the Supreme Court noted that the most natural reading of §

1681p of the FCRA is that Congress implicitly excluded a general discovery rule

by explicitly including a more limited one.  *Id.*  The same is true for § 1692k of the

FDCPA.  Accordingly, the Court will not apply the general discovery rule to this

case.

Finally, Mangum contends that even if the Court does not apply the general

discovery rule, the statute of limitations should be equitably tolled in this case.

"Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable

to obtain vital information bearing on the existence of his claim."  *Santa Maria v.*

*Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000).  Equitable tolling focuses on

whether there was excusable delay by the plaintiff – if a reasonable plaintiff would

not have known of the existence of a possible claim within the limitations period,

then equitable tolling will serve to extend the statute of limitations for filing suit

until the plaintiff can gather what information she needs.  *Id.*  Equitable tolling

does not, however, postpone the statute of limitations until the existence of a claim

is a virtual certainty.  *Id.*

In this case, Mangum acknowledges that she learned about the events that

constitute the alleged violations of the FDCPA on December 15, 2004, only a few

days after they occurred and well within the one-year limitations period.  (Mangum

Aff., ¶¶ 12-13).  Under these circumstances, the Court simply cannot find that a

reasonable plaintiff in Mangum's position would not have known of the existence

of a possible claim within the limitations period.  Accordingly, the Court will not apply equitable tolling to extend the statute of limitations in this case.  Thus, the explicit one-year statute of limitations is fatal to Mangum's FDCPA claims against Bannock and Bonneville, and the Court will grant summary judgment in favor of Bannock and Bonneville on those claims.

### III.   FCRA Claims

Defendants Bannock, Bonneville and the City of Pocatello ("Pocatello") seek summary judgment on Mangum's FCRA claims.  Defendants' motions are based on the contention that Bannock and Bonneville are not "consumer reporting agencies" as defined in the FCRA, and/or that Bannock and Bonneville did not provide Pocatello with "consumer reports" or "investigative consumer reports" as defined in the FCRA.

### A.   Consumer Reporting Agencies

A "consumer reporting agency," for purposes of FCRA, is defined as follows:

> [A]ny person which, for monetary fees, dues or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating ... information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

**Memorandum Decision and Order - Page 8**

15 U.S.C. § 161a.  The court in *Lewis v. Ohio Professional Electronic Network LLC*, 190 F.Supp.2d 1049 (S.D.Ohio 2002) best summed up the test for determining whether an entity can be deemed a consumer reporting agency by stating that the following four factors must be satisfied: "(1) it acts in exchange for compensation of the kind described [or on a cooperative nonprofit basis]; (2) it regularly assembles or evaluates information on consumers; (3) its purpose in doing so is to furnish consumer reports; and (4) it utilizes interstate commerce in the preparation or furnishing of a consumer report. *Lewis*, 190 F.Supp.2d at 1056 (internal quotations and citations omitted).

Mangum argues that Bannock and Bonneville fit the definition of a "consumer reporting agency" because they have a policy of providing consumer information to police departments on a cooperative, nonprofit basis.  (Mangum Memo in Support of Summary Judgment, p. 8, Docket No. 60-2).  The Court doubts that providing consumer information to police departments when the information is sought pursuant to an investigation (Casperson Aff., Ex. B, pp. 22-22; Ex C, pp. 19-23) constitutes the type of nonprofit agreement contemplated by the FCRA.  The Court also believes that it is a stretch to suggest that by collecting information from their clients and placing them in a single file, Bannock and Bonneville "assemble" consumer information for purposes of the FCRA – the

**Memorandum Decision and Order - Page 9**

requirement that a consumer reporting agency assemble or evaluate consumer

information involves more than receipt and retransmission of information.  *See*

*Lewis*, 190 F.Supp.2d at 1056.  However, the Court need not address these

concerns because there is clearly no evidence in the record that Bannock and

Bonneville assemble consumer information "for the purpose of furnishing

consumer reports."  *Id.*

Mangum argues that "because Bannock and Bonneville's procedure was to

provide consumer or debtor information to police departments whenever such

information was requested, they assembled the information for the purpose of

providing consumer reports to third parties."  (Mangum Memo in Support of

Summary Judgment, p. 8).  That is fallacious reasoning.  Just because a collection

agency turns information over to the police in response to an investigation does not

mean that the agency assembled the information for that purpose.  There is simply

nothing in the record suggesting that Bannock and Bonneville assemble or evaluate

consumer information for any other purpose than to collect debt on behalf of their

clients - the true business purpose of a collection agency.  Accordingly, the Court

finds that Bannock and Bonneville are not "consumer reporting agencies" for

purposes of the FCRA.  In turn, because Bannock and Bonneville must be

"consumer reporting agencies" in order to find a violation of the FCRA as alleged

**Memorandum Decision and Order - Page 10**

by Mangum, the Court will grant summary judgment in favor of all defendants on Mangum's FCRA claims.

## IV.    1983 Claims

The Ninth Circuit has observed that the relevant Supreme Court precedents delineate at least two kinds of constitutionally-protected privacy interests: (1) the individual interest in avoiding disclosure of personal matters; and (2) the interest in independence in making certain kinds of important decisions. *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999). The Seventh Circuit recognized that seven circuits have determined that the constitutional right of privacy in confidential information covers at least some financial disclosures. *See Denius v. Dunlap*, 209 F.3d 944, 957 (7th Cir. 2000).[2]

---

[2] *Denius* referenced the following cases: *Sheets v. Salt Lake County*, 45 F.3d 1383, 1388 (10th Cir.1995) (finding a constitutionally protected privacy interest in matters concerning "marriage, finances, and business"); *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir.1994) (recognizing a constitutionally protected privacy interest in financial information); *Alexander v. Peffer*, 993 F.2d 1348 (8th Cir.1993) (recognizing a constitutionally protected privacy interest in "highly personal medical or financial information"); *Walls v. City of Petersburg*, 895 F.2d 188, 194 (4th Cir.1990) (same); *Fraternal Order of Police v. City of Philadelphia*, 812 F.2d 105, 115 (3d Cir.1987) (same); *Plante v. Gonzalez*, 575 F.2d 1119, 1135 (5th Cir.1978) (recognizing a "substantial" privacy interest in confidential financial information); *see also James v. City of Douglas*, 941 F.2d 1539, 1543 n. 7 (11th Cir.1991) (recognizing Fifth Circuit precedent in this area finding a right to privacy in confidential financial information as binding)). The only circuit to explicitly disavow such a right, as well as the right of confidentiality in general, is the Sixth Circuit. *See J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir.1981) (finding that no

Absent from the list, however, is the Ninth Circuit.  But, citing the Ninth

Circuit in *In re Crawford*, the Seventh Circuit indicated that other circuits, in order

to determine whether information may receive protection under the confidentiality

branch of the right to privacy, have considered whether the information is intimate

and personal in nature.  *Denius*, 209 F.3d at 957.  The Seventh Circuit concluded

that "[b]ecause confidential financial information may implicate substantial

privacy concerns and impact other fundamental rights, we agree with the

overwhelming majority of our sister circuits that some types of financial

information involve the degree and kind of confidentiality that is entitled to a

measure of protection under the federal constitutional right of privacy."  *Id.*  This

Court agrees.

However, the right to informational privacy is not absolute.  *See In Re

Crawford*, 194 F.3d at 959.  Instead, "it is a conditional right which may be

infringed upon a showing of proper governmental interest."  *Id.* (internal

quotations and citation omitted).  To determine whether there is a proper

governmental interest, the court must weigh competing interests, including "the

---

right of confidentiality exists under the federal constitution); *Cutshall v. Sundquist*, 193 F.3d 466, 481 (6th Cir.1999) (recognizing the continued vitality of the *DeSanti* decision).

**Memorandum Decision and Order - Page 12**

type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *Id.*  This list is not exhaustive, and the relevant considerations will necessarily vary from case to case. *Id.* "In most cases, it will be the overall context, rather than the particular item of information, that will dictate the tipping of the scales." *Id.*  Still, the government always has the burden of showing that its use of the information advances a legitimate state interest and that its actions are narrowly tailored to meet the legitimate interest. *Id.*

        In this case, the question then, is whether the financial information identified by Mangum deserves constitutional protection, and if it does, whether Pocatello can show a governmental interest for infringing on that right.  At this point, serious questions remain, including questions as to what caused Mangum's financial woes, what safeguards were in place to guard the obtained information, and the degree of the need for access to the information.   Such questions would clearly impact a fact-finder's assessment of the overall context of the situation.  Therefore, the

**Memorandum Decision and Order - Page 13**

Court concludes that, given the number of factors to be considered in determining whether Mangum's financial information deserve constitutional protection, there remains a genuine issue of material fact which is better left to a jury. Moreover, the case becomes even more blurry when one considers the additional question of whether Pocatello can show a governmental interest for requesting the information. Accordingly, the Court will deny summary judgment as to the both Mangum and Pocatello with respect to the section 1983 claim.

### A.    City of Pocatello may be held liable as a municipality.

Pocatello claims that it cannot be held liable for Captain Furu's actions. Pursuant to *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978) and its progeny, the Supreme Court has determined that municipalities are persons subject to damages liability under section 1983 where action pursuant to official municipal policy of some nature causes a constitutional tort. *Monell*, 436 at 691. To be held liable, the municipality itself must cause the constitutional deprivation; it may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior. *Id.*

A plaintiff may establish municipal liability in one of three ways: (1) the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or

Memorandum Decision and Order - Page 14

custom which constitutes the standard operating procedure of the local governmental entity; (2) the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy; or (3) the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.  See *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).

Pocatello makes nothing more than the bare assertion that it cannot be held liable under a respondeat superior theory.  However, there is sufficient evidence in the record to at least create a genuine issue of material fact as to whether Chief of Police Guthrie was the official with final policy-making authority, and that he ratified Captain Furu's actions and the basis for them.  (Mangum Aff., ¶ 23, Ex. 4).  Therefore, Pocatello's respondeat superior argument does not change the Court's decision to deny it motion for summary judgment on the section 1983 claim.

### B.    Qualified Immunity for Captain Furu

Finally, Captain Don Furu claims that he is entitled to qualified immunity. "Qualified immunity serves to shield government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *San Jose*

*Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971

(9th Cir. 2005) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The

Supreme Court has set forth the following two-pronged inquiry to resolve all

qualified immunity claims:

> First, taken in the light most favorable to the party
> asserting the injury, do the facts alleged show the
> officers' conduct violated a constitutional right?  Second,
> if so, was that right clearly established?  The relevant,
> dispositive inquiry in determining whether a right is
> clearly established is whether it would be clear to a
> reasonable officer that his conduct was unlawful in the
> situation he confronted.  This inquiry is wholly objective
> and is undertaken in light of the specific factual
> circumstances of the case.

*Id.* (internal quotations and citations omitted).  Thus, a district court should

"concentrate at the outset on the definition of the constitutional right and . . .

determine whether, on the facts alleged, a constitutional violation could be found. .

. ." *Id.* at 207.  If a constitutional violation can be found, the court then decides

whether the violation was the source for clearly established law that was

contravened in the circumstances of the case.  *Id.*

     In this case, Mangum alleges that Captain Furu violated her right to avoid

disclosure of personal financial information.  Taken in a light most favorable to

Mangum, the facts of this case show Captain Furu's conduct violated a

constitutional right.  However, as discussed above, and based on the fact that

**Memorandum Decision and Order - Page 16**

neither the Court nor the parties could identify a case addressing the question of whether an officer violates another police department employee's right to financial privacy by obtaining her debt records, the Court does not find that such a right was clearly established – the Court cannot find that it would be clear to a reasonable officer that Captain Furu's conduct was unlawful.  Accordingly, the Court will grant Captain Furu qualified immunity and dismiss the claim against him.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant Bannock Collections' Motion for Summary Judgment (Docket No. 46) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that Defendant City of Pocatello and Don Furu's Motion for Summary Judgment (Docket No. 54) shall be, and the same is hereby GRANTED in part and DENIED in part.  The motion is denied with respect to Mangum's Section 1983 claim against the City of Pocatello.  The motion is granted with respect to all other claims.

IT IS FURTHER ORDERED that Defendant Bonneville Billing & Collections, Inc.'s Motion for Summary Judgment (Docket No. 58) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that and Plaintiff's Motion for Summary

**Memorandum Decision and Order - Page 17**

Judgment (Docket No. 60) shall be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that the Clerk of the Court shall set this case

for a status conference for the purpose of setting the case for trial.

DATED:  **July 3, 2007**



Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - Page 18**